

Villanova University Charles Widger School of Law
Villanova University Charles Widger School of Law Digital Repository

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-22-2008

# Bender v. Monroe

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2141

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Bender v. Monroe" (2008). *2008 Decisions*. Paper 630.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/630

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-2141
_____

KEVIN BENDER and PATRICIA BENDER,

Appellants,

v.

TOWNSHIP OF MONROE, MONROE TOWNSHIP POLICE DEPARTMENT,
PATROL OFFICER JOHN McBRIDE, PATROL OFFICER BART McILVANE,
PATROL OFFICER MICHAEL J. DORAN, and SGT. ROBERT CLARK

Appellees.
_____

On Appeal from the United States District Court
for the District of New Jersey
No: 05-cv-216
District Judge: Honorable Joseph E. Irenas
_____

Argued July 22, 2008

Before: McKee, FUENTES, and JORDAN, Circuit Judges.

(Opinion Filed: August 22, 2008)

David A. Avedissian (Argued)
135 Kings Highway East
Haddonfield, New York 08033

Attorney  for Appellants

James R. Birchmeier (Argued)
Powell, Birchmeier, & Powell
1891 State Highway 50
P.O. Box 582
Tuckahoe, NJ 08250

      Attorney for Appellees

_____

OPINION OF THE COURT

_____


FUENTES, Circuit Judge.

This is an appeal from a grant of summary judgment in a § 1983 claim.  The dispute concerns Appellant Kevin Bender's allegations that he was beaten by the police, after being arrested for a domestic disturbance.  For the reasons set forth below, we will reverse the District Court's grant of summary judgment for the defendants, and remand for further proceedings.

I.

The District Court had subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, as Bender alleged violations of 42 U.S.C. § 1983, and supplemental jurisdiction over Bender's state law claims pursuant to 28 U.S.C. § 1367.  We have jurisdiction over the District Court's grant of summary judgment pursuant to 28 U.S.C. § 1291.  We will exercise plenary review of the District Court's grant of summary judgment, and will apply the standard that the District Court should have applied in determining whether summary judgment was appropriate.  Ruehl v. Viacom, Inc., 500

F.3d 375, 380 (3d Cir. 2007).  Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  In making this determination, all "[i]nferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true."  Modrovich v. Allegheny County, Pa., 385 F.3d 397, 415 (3d Cir. 2004) (internal quotation marks omitted).  An issue is genuine, and thus, summary judgment cannot be granted, if a reasonable jury could possibly hold in the nonmovant's favor on that issue.  Congregation Kol Ami v. Abington Twp., 309 F.3d 120, 130 (3d Cir. 2002).

## II.

The parties provided the court with dramatically different versions of the facts in question. Since we must determine whether there is any genuine issue of material fact necessitating a trial, we review the two versions of the events in question in detail.

It is undisputed that, on March 9, 2003, Mr. and Mrs. Bender were driven home from a party where they had both been drinking, by their oldest daughter, Colleen.  When they arrived home, Mrs. Bender, who was drunk, could not get the door to their house open and an argument ensued.  Kevin Bender did not provide the court with a description of the ensuing argument but did not dispute at oral argument that all three of them started slapping each other.  Then, Mrs. Bender went into the bathroom to call 911 and Mr.

Bender attempted to break the bathroom door open. Colleen then called 911 from the porch. Mrs. Bender joined Colleen on the porch and Mr. Bender locked them out of the house. When the police arrived, Colleen and Mrs. Bender were outside the house, hysterically crying, and Mr. Bender was locked inside the house. Mrs. Bender asked the officers to force open the door because she was scared for the safety of her two other daughters, who were locked inside the house with Mr. Bender.

At this point in the story, the two sides' factual recitations radically diverge. According to Bender, when the officers broke down the door to his house, he did nothing to threaten the police officers. He claims that the defendants' allegation that he was holding an Allen wrench and standing in a boxing stance when they forced open the door are false, and that, in fact, he held nothing in his hands when they came in, and did not threaten the officers in any way. He says that the officers tackled him after breaking his door open, that they pushed his head into a coffee table, and ultimately handcuffed him. He conceded at oral argument that he, at some point after he was handcuffed, kicked an officer in the groin. He says the officers led him from his house and beat him on his front lawn, in front of his wife and three daughters, while he was handcuffed. He claims that while the officers were beating him, one of them hit him in the face with a flashlight, causing a fracture in his left cheekbone. He also claims that one of the defendants, Officer Clark, threatened him while he was in the hospital, telling him that, if he told the hospital staff how he got injured, Clark would retaliate against him.

The defendants version of Bender's arrest is quite different. According to the

defendants, the officers had to place Mr. Bender under arrest verbally through the closed door to his house, because he refused to open it. Then, after receiving encouragement from Mrs. Bender, they forced the door open. Once they got the door open, the defendants claim that Mr. Bender met them in a boxing stance, holding an Allen wrench in his hand. They say that Mr. Bender refused to drop the wrench so they forcibly took him to the floor and handcuffed him. The defendants allege that his face may have been injured at this point, because he struck a coffee table in the living room with his face, as they were struggling to get the handcuffs on him. Then, as they escorted Mr. Bender to the police car, they say he was fighting and kicking, and kicked one of the officers in the groin. They claim that Mr. Bender fell to the ground, and continued to kick at the officers to keep them away from him. Once they finally got him into the car, they say that he repeatedly head butted the partition, also potentially causing the injury to his face.

The depositions of family members support Mr. Bender's version of the events of that night. His daughter Cara testified that when the cops kicked in the door, Mr. Bender stepped back and the cops slammed him on the ground and handcuffed him. Cara testified that once they got him outside, a bald officer raised a flashlight into the air and threatened her dad with it. She stated that she did not see him hit her father with it because she turned her head.

His daughter Colleen also testified that her father just stood there when the officers opened the door and that they tackled him to the floor. Colleen stated that while they were transporting him, handcuffed, to the patrol car, he was yelling and cursing and tried

to kick at the officers. Colleen said that, in response, the officers punched him in the stomach, sending him to the ground, and that all the officers piled on top of him, beating him, and hitting him with a flashlight.

Kaitlyn Bender, his third daughter, testified that the officers tackled him in the house to handcuff him and that, when they got out onto the front lawn, she heard her dad making grunting noises because they were beating him. Mrs. Bender testified at her deposition that she didn't watch as the officers took Mr. Bender from the house to the patrol car. She did not know that he had been beaten until she was told he was being taken to the hospital.

In connection with this incident, Mr. Bender was charged in a 6 count indictment, including counts of resisting arrest and possessing an Allen wrench as a weapon. He eventually pled to one count of aggravated assault on a police officer. At his guilty plea hearing, he admitted to kicking a police officer while he was handcuffed.

III.

Bender argues that the District Court erred by granting the defendants' summary judgment motion with respect to his 42 U.S.C. § 1983 excessive force claim. We agree.

In granting the defendants' summary judgment motion, the District Court analyzed whether the force used against Mr. Bender was reasonable under the Fourth Amendment. The District Court found that it was undisputed that the police officers placed Mr. Bender under arrest before entering his home, that he refused to open the door and therefore resisted arrest, and that the officers needed to forcibly enter the house. In addition, the

District Court noted that Mr. Bender pled guilty to one count of aggravated assault on a police officer. Accordingly, the court found, without any further analysis, that the force used to restrain him was reasonable.

This finding was error. Taking the facts in the light most favorable to Bender, he resisted arrest by refusing to open the door when they knocked, but did not threaten the police once they forced the door open. Next, if Mr. Bender is to be believed, the officers, unprovoked, smashed his face against a coffee table, in their efforts to handcuff him. Once the officers led Mr. Bender out of his house, he kicked one of them and the officers retaliated by beating him up, while he was handcuffed, hitting him in the face with a flashlight and breaking his cheekbone. The District Court should have allowed a jury to determine which version is to be believed and whether the facts finally proved at trial amount to excessive force.

IV.

It is clear, as detailed above, that a genuine issue of material fact remains to be decided at trial. Accordingly, we will reverse the decision of the District Court and remand for further proceedings.